| | |
|---|---|
| **KIMBERLY WILLIAMS, ET AL** | **CIVIL ACTION NO.: 21-00092-BAJ-SDJ** |
| **VERSUS** | **JUDGE BRIAN JACKSON** |
| **GOAUTO INSURANCE COMPANY, ET AL** | **MAGISTRATE JUDGE SCOTT JOHNSON** |

<u>**PLAINTIFFS' FIRST SUPERSEDING AND AMENDING COMPLAINT FOR DAMAGES – CLASS ACTION**</u>

NOW INTO COURT, through undersigned counsel, come plaintiffs Kimberly Williams and Nicholas Jenkins, appearing herein individually and on behalf of all others similarly situated, who hereafter may be referred to as the "Class," all of whom are domiciled within and citizens of the State of Louisiana, and who pursuant to Fed. R. Civ. P. 15 file this First Superseding and Amending Complaint for Damages – Class Action ("Complaint"), which replaces and supersedes the plaintiffs' Petition for Damages – Class Action, as follows:

1.

This is a class action brought by plaintiffs Kimberly Williams and Nicholas Jenkins pursuant to La. Code Civ. Proc. art 591 *et seq.*, and filed on behalf of any and all persons currently citizens of the State of Louisiana who are either:

(a) current and former GoAuto Insurance Company ("GoAuto") insureds whose automobile insurance policies were issued, written, or delivered in Louisiana and whose insurance policies were purportedly cancelled by GoAuto within the 10 years prior to the filing of this petition under the circumstances alleged herein despite the fact that GoAuto had not properly complied with the mandatory Louisiana statutory provisions relating to cancellation of Louisiana automobile insurance policies (hereinafter sometimes referred to as "insured class members"); and

(b) persons who within 10 years prior to the filing of this petition had a claim against a GoAuto insured arising out of the insured's operation of a motor vehicle and GoAuto took the position that the insured's policy was purportedly cancelled despite the fact that GoAuto had not properly complied with the mandatory Louisiana statutory provisions relating to cancellation of Louisiana automobile insurance policies (hereinafter sometimes referred to as "third-party class members").

2.

Made defendants herein are:

a) GOAUTO INSURANCE COMPANY ("GOAUTO"), a Louisiana insurance company which can be served through its agent for service of process, Gregory W. Tramontin, 533 Highlandia Drive, Suite A, Baton Rouge, LA 70810;

b) GOAUTO MANAGEMENT SERVICES, LLC ("GMS"), doing business as "GoAuto Insurance," a Louisiana limited liability company which can be served through its agent for service of process, Gregory W. Tramontin, 533 Highlandia Drive, Suite A, Baton Rouge, LA 70810;

c) GOAUTO, LLC, a Louisiana limited liability company which can be served through its agent for service of process, Gregory W. Tramontin, 533 Highlandia Drive, Suite A, Baton Rouge, LA 70810;

d) AUTO PREMIUM ASSISTANCE COMPANY, LLC ("APAC"), a Louisiana limited liability company which can be served through its agent for service of process, Gregory W. Tramontin, 533 Highlandia Drive, Suite A, Baton Rouge, LA 70810;

e) GO CARD, LLC, a Louisiana limited liability company which can be served through its agent for service of process, Gregory W. Tramontin, 533 Highlandia Drive, Suite A, Baton Rouge, LA 70810; and

f) HEALTH REFORM INSURANCE, LLC, a Louisiana limited liability company which can be served through its agent for service of process, Gregory W. Tramontin, 533 Highlandia Drive, Suite A, Baton Rouge, LA 70810.

3.

The defendants are liable unto plaintiffs and the putative class members for bad faith penalties and attorney fees under contract, La. R.S. 22:1973, La. R.S. 22:1892, and any and all pertinent provisions of Louisiana law, in an amount that is just and reasonable in the premises.

4.

As set forth below, the defendants are liable to the plaintiffs/class representatives and (1) the putative class of Louisiana citizens who were or are GoAuto insureds whose policies of automobile insurance were "delivered or issued for delivery" in the state of Louisiana pursuant to La. R.S. 22:1266 and which were purportedly cancelled by the defendants, but which were not actually cancelled because of a failure by the defendants to comply with the requirements of Louisiana law in the purported cancellation of those policies, as well as (2) the putative class of third-party Louisiana citizens who were claimants who had claims against persons to whom GoAuto "delivered or issued for delivery" policies in the state of Louisiana and those policies were not actually canceled for the same reasons as set forth above.

5.

The allegations in this Complaint relate solely to GoAuto's and the defendants' operations in the state of Louisiana, and not in any other state. Further, the plaintiffs and putative

class members seek redress and remedies available against the defendants for violations of Louisiana law related to acts and omissions pertaining to automobile insurance policies as defined in La. R.S. 22:1266 with the same being delivered or issued for delivery in the state of Louisiana, and as such Plaintiffs do not seek redress or remedies under any other states' laws which apply to citizens of any other states and which may be related to automobile insurance policies that were delivered or issued for delivery in any states other than Louisiana.

6.

In purportedly cancelling and sending out notices of cancellation when the policies were not actually cancelled, and in misrepresenting to the plaintiffs and the class members that such policies had been cancelled when they had not been cancelled, GoAuto, together with the other defendants operating as a single business enterprise and through their common officers, directors, managers, and shareholders, acted in a manner contrary to public policy and inconsistent with the obligations owed to the plaintiffs and to the insured and third-party class members under the law by failing to operate in good faith, and by instead operating under a scheme to deny their insureds coverage by cancelling automobile insurance policies without following the mandatory statutory procedures and improperly denying the plaintiffs and the insured and third-party class members coverage under these insurance policies, although the defendants knew or should have known that these policies were never properly canceled. The defendants also knowingly and improperly reported the purported cancellations as actual cancellations to the Louisiana Department of Public Safety, Office of Motor Vehicles, subjecting GoAuto's Louisiana insureds to statutory fines and penalties.

7.

GoAuto Insurance Company ("GoAuto") has sold minimum-limits automobile insurance policies in the state of Louisiana since 2009. In addition to policies written through GoAuto, some of the policies previously sold as GoAuto insurance policies were written through Gramercy Insurance Company, a Texas insurer which has since gone out of business, and through Citadel Insurance Company, which purchased the assets and liabilities of Gramercy Insurance Company.

8.

The automobile insurance policies that have been sold by GoAuto in the state of Louisiana were, and continue to be, financed by Auto Premium Assistance Company, LLC ("APAC"), a premium finance company which finances policies only for GoAuto.

9.

GoAuto and APAC do not have any employees. Rather, any person who purportedly does work for or on behalf of GoAuto and/or APAC is employed by GoAuto Management Services, LLC ("GMS").

10.

GoAuto, LLC is the parent company of its subsidiaries and co-defendants GMS, GoAuto, APAC, Go Card, LLC, and Health Reform Insurance, LLC.

**LOUISIANA LAW ON AUTOMOBILE INSURANCE POLICY CANCELLATIONS**

11.

Under the law that was in place at the time GoAuto and APAC began operating in Louisiana in 2009 and which remains in place into the present, when an automobile insurance policy is financed by a premium finance company like APAC which is granted a power of

attorney authorizing it to cancel the policy in the event of non-payment of premiums, the only

way the premium finance company can legally request that the policy be cancelled by the insurer

is by strictly adhering to the provisions of La. R.S. 9:3550(G). "[A]ny defect in this process

results in an ineffective cancellation of the policy." *Eaglin v. Champion Ins. Co.*, 558 So. 2d 284,

287 (La. App. 3 Cir. 1990); *Dairyland Ins. Co. v. Marks*, 468 So. 2d 841, 844 (La. App. 1 Cir.

1985).

12.

Specifically, under Louisiana law, when APAC seeks to cancel an automobile insurance

policy issued by GoAuto, it must first provide GoAuto's Louisiana insureds with a notice of

cancellation advising of APAC's intent to cancel the policy. La. R.S. 9:3550(G)(2).

13.

Once 10 days have passed after the notice of cancellation is provided to the insured,

APAC may request cancellation of the policy by:

> sending to the insurer [GoAuto], by depositing in the mail or with a private
> carrier, or via electronic mail, within five business days after the date of
> cancellation, except when the payment has been returned uncollected, a copy of
> the notice of cancellation together with a statement certifying that:
>
> (i) The premium finance agreement contains a valid power of attorney as provided
> in Paragraph (1) of this Subsection.
>
> (ii) The premium finance agreement is in default and the default has not been
> timely cured.
>
> (iii) Upon default, a notice of cancellation was sent to the insured as provided in
> Paragraph (2) of this Subsection, specifying the date of sending by the premium
> finance company to the insured.
>
> (iv) Copies of the notice of cancellation were sent to all persons shown by the
> premium finance agreement to have an interest in any loss which may occur
> thereunder, specifying the names and addresses of any governmental agencies,
> holders of a security interest in the insured property, or third parties to whom the
> insurance premium finance company has sent notice of cancellation.

La R.S. 9:3550(G)(3)(a).

14.

GoAuto may consider that its insured has requested cancellation of its automobile insurance policy only "**[u]pon receipt** of such notice of cancellation and statement from" APAC. La. R.S. 9:3550(G)(3)(b)(i) (emphasis added).

15.

GoAuto and APAC failed to follow the mandatory Louisiana statutory procedures for cancelling an automobile insurance policy that was issued to its insureds in Louisiana at any time from 2009 to the present. Therefore, each and every policy of a Louisiana GoAuto insured that GoAuto and APAC attempted to cancel from 2009 to the present was never actually cancelled.

**THE DEFENDANTS' IMPROPER AND INEFFECTIVE CANCELLATION PROCEDURES**

16.

The cancellation process that APAC and GoAuto have uniformly and continuously followed in Louisiana since 2009 and up to the date of filing of the original Class Action Petition is a process in which there is no written communication between any representatives of either company and instead involves a fully computerized and unilaterally determined and automated system. Should APAC contend that a GoAuto insured did not make a timely payment on a GoAuto automobile insurance policy, APAC's administered network and computer system automatically generates a notice of cancellation that is either mailed or sent by electronic mail to GoAuto's insured.

17.

If a payment is not recorded in APAC's computer system by midnight of the tenth day after the notice of cancellation is sent to the insured, APAC's computer system then

automatically inputs changes in GoAuto's computer system, which is connected to and updated by APAC's computer system, in a "master/slave relationship" allowing the APAC system to "synchronize" GoAuto system's database and thereby cancel the allegedly unpaid automobile insurance policies within the GoAuto system. Through that automated update process, the cancellation of the policy is purportedly effected within the computer system at 12:01 am on the date of cancellation. However, at no time prior to nor after such cancellation is there an exchange of any emails or other written communications nor any cognitive transfer of this information between or among any of GMS's employees, including those employees who purportedly do work for APAC and/or GoAuto, regarding such cancellations. None of the representatives or other individuals who purportedly work for GoAuto ever oversee, review, or approve such cancellations individually, nor do they later review or approve any compilations or documentation of such changes made in the GoAuto computer system by APAC's administered computer system, which unilaterally and automatically changes the database as it relates to the status of and cancellation of policies issued by GoAuto and maintained within GoAuto's system's database.

18.

Later that same morning on the day in which the cancellation is purportedly effected via internal and automated actions within the computer system, at approximately 2:30 am (after the computer system completes backup procedures), the computer system automatically generates an electronic mail message that contains automatically generated attachments, including (1) an unsigned statement identifying all of the policies that are requested for cancellation on that date, and (2) the notices of cancellation for those policies. That automatically generated electronic mail message is automatically sent from the e-mail account for James Holland, the chief

information officer for GMS, to four separate electronic mail accounts maintained by Angela Pittman, the operations manager for GMS.

19.

The documents attached to the automatically generated electronic mail message that is sent from James Holland's electronic mail account to Angela Pittman's electronic mail accounts are later printed out by another employee of GMS who purportedly does work for APAC, but who is not employed by APAC. That printed statement is signed by Angela Pittman to purportedly certify pursuant to La R.S. 9:3550(G)(3)(a) that (1) the premium finance agreement contains a valid power of attorney; (2) the premium finance agreement is in default and the default has not been timely cured; (3) upon default, a ten-day notice of cancellation was sent to the insured, and that a copy of the notice is enclosed, with an affidavit proof of mailing available upon request; and (4) copies of the ten-day notice of cancellation were sent to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder.

20.

Significantly, GoAuto's cancellation is purportedly effected and the policy is maintained in the respective computer systems of APAC and GoAuto as being cancelled during the middle of the night before any of any of the certifications are made, despite the fact that La R.S. 9:3550(G)(3) specifically requires the certifications first be executed by APAC, delivered by APAC, and received by GoAuto, before GoAuto has the right to first consider that the cancellation of any policies has been requested by APAC and then to actually act on that cancellation request. Instead, GoAuto takes action (through an automated process) by cancelling its insured's policies within its system before any request for cancellation is received, before

APAC has certified any of the statements in the cancellation request, and before those certifications have even been generated by the automatic computer process.

21.

After the cancellation is purportedly already effected within the computer systems the night before, Angela Pittman, the GMS operations manager who purportedly does work for APAC, signs the certification. Then, a GMS employee walks the certification and associated documents to a file room, where the untimely signed certifications are placed into a file cabinet. As GMS's underwriting manager Kim McCloud has previously testified, the certification and documents are not reviewed by anyone nor are they otherwise handled by any GMS employees purportedly doing work for GoAuto before they are placed in the file room. Nor, as Ms. McCloud has also testified, do any GMS employees purportedly doing work for GoAuto take any action to effect cancellation of the policies before or after the certification and documents are placed into the file cabinet. Instead, that cancellation was already internally done by the computer systems automatically the preceding night before the certification was signed.

22.

The Louisiana legislature has amended La. R.S. 9:3550 in recent years to account for technological advances, most notably in 2003 when the statute was amended to allow a premium finance company to send a request for cancellation to an insurer by electronic mail, in addition to the previous two authorized methods of mail or private carrier. Acts 2003, No. 645, § 1. However, the legislature has never amended the statute to authorize a notice of cancellation to be sent, received, or otherwise made effective merely by an automated interaction of two computer processes, the synchronization of computer databases, or any other methods that are performed automatically and without human involvement or cognition. As the testimony of representatives

of the defendants has established, the cancellation process used by them clearly fails to comply with the statutory requirements, and therefore each such failed attempt at cancellation of such policies delivered or issued for delivery in Louisiana was a clear and unequivocal violation of the statutorily mandated steps and procedures required by Louisiana law.

23.

These cancellation procedures used by the defendants were not publicly disclosed or otherwise made known to members of the public, who at all times were allowed to presume that the defendants had complied with all Louisiana state laws that govern their operations and the cancellation of the policies they had issued in Louisiana.

24.

The above procedures have been used by GoAuto for as long as GoAuto has been in operation in the state of Louisiana and are improperly followed by the defendants in each and every case of an attempted cancellation of a Louisiana insured's GoAuto automobile insurance policy "delivered or issued for delivery" in the state of Louisiana. As such, the defendants failed to comply with the mandatory cancellation procedures set forth under La. R.S. 9:3550(G), and therefore failed in each attempted cancellation of such Louisiana policies under these mandatory cancellation procedures in three material ways.

25.

First, La. R.S. 9:3550(G)(3)(b)(i) states that an insurer may consider that cancellation of an insured's policy has been requested upon the insurer's **receipt** of the notice of cancellation from the premium finance company. But GoAuto never receives a notice of cancellation from APAC as required by this statute. Instead, the cancellation documents are placed into a file room by a GMS employee purportedly doing work for APAC, and no one associated with or affiliated

with GoAuto ever receives, touches, or even sets eyes upon those documents. Nevertheless, GoAuto still considers that cancellation of an insured's policy was requested by APAC despite the fact that GoAuto never received the required statutory notice, and the policy cancellation automatically becomes effective within the companies' shared computer system.

26.

Second, La R.S. 9:3550(G)(3)(a) requires that the premium finance company certify the statements set forth in the statute before the cancellation request can be made. However, APAC (through GMS operations manager Angela Pittman) does not certify these statements until after GoAuto's and APAC's computer systems have already automatically cancelled the policies that are part of the cancellation request that is later certified by APAC. Thus, in violation of the statute, GoAuto takes action to cancel the policy before any request for cancellation is received, because the computer systems are set to automatically cancel the insureds' policies before APAC even makes a request for cancellation, regardless of whether or when APAC certifies the statements or purports to deliver the notice requesting cancellation to GoAuto, and without any consideration, review, or action by GoAuto.

27.

Third, the request for cancellation, which La R.S. 9:3550(G)(3)(a) requires be delivered by APAC to GoAuto by (1) mail, (2) private carrier, or (3) electronic mail, is never so delivered to GoAuto. Instead, a GMS employee, purportedly doing work for APAC, takes the notice and certified statement and walks it over to a filing room, where it is placed into a cabinet. Thus, the method of delivery of the cancellation request is in violation of the statutory requirements.

28.

APAC has admittedly attempted to request each day over the past 10 years the cancellation of thousands of GoAuto automobile insurance policies "delivered or issued for delivery" in the state of Louisiana to Louisiana citizens using the above-described deficient cancellation procedures. As such, all of the defendants' attempted cancellations using these procedures, which were and are legally deficient under Louisiana law, were void and without effect, such that the defendants never effectuated the cancelation of any of the GoAuto policies that were delivered or issued for delivery in the state of Louisiana. Instead, each and every policy that the defendants attempted to cancel from GoAuto's inception in the state of Louisiana in 2009 to the present has remained in effect through the end of the expiration date of the policy as set forth within each insured's insurance contract with GoAuto.

29.

The right to cancel the insurance policies issued to GoAuto's insureds is subject to a "resolutory condition" under Louisiana Civil Code article 1767. Pursuant to La. R.S. 9:3550(G)(3)(b)(i), the duties and obligations that GoAuto owes to its insureds under the insurance contracts issued by it remain in effect, and those policies cannot be cancelled, unless and until the occurrence of the resolutory conditions imposed by the statute, including but not limited to GoAuto's "receipt of such notice of cancellation and statement from the premium finance company." Thus, absent the occurrence of this resolutory condition of the receipt of notice of cancellation from APAC, GoAuto has no right to consider that a request for cancellation has been made, and the insurance policy must remain in effect. Because APAC places the documents into a file room and no person purportedly doing work for GoAuto receives a request for cancellation, the resolutory condition is never satisfied.

- 13 -

30.

Further, in accordance with Louisiana law and jurisprudence, the ability to cancel an insurance policy issued to GoAuto's insureds is subject to a "condition precedent" and/or "suspensive condition," as such terms were explained and defined by the Louisiana Supreme Court in *Southern States Masonry, Inc. v. J.A. Jones Const. Co.*, 507 So. 2d 198, 204 n. 15 (La. 1987). As stated above, under La. R.S. 9:3550(3)(b)(i), only upon the occurrence of the condition precedent/suspensive condition of the insurer's "receipt of such notice of cancellation and statement from the premium finance company, . . . the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:885." GoAuto is prohibited from taking any action to cancel a policy unless and until the occurrence of that condition of the receipt of notice of cancellation from APAC, which for the reasons described above never occurs.

31.

Additionally, until receipt of the notice of cancellation, an insurer is prohibited under La. R.S. 9:3550(G)(4) from giving "notice to any governmental agency, holder of a security interest in the insured property, or other third party as shown in the records of the insurer requiring statutory, regulation, or contractual notice and which were not given by the premium finance company as provided in Paragraph (3) of this Subsection." Such provisions were violated by the acts of the defendants wherein they notified the Louisiana Department of Public Safety, Office of Motor Vehicles of the ineffective and improper alleged cancellations and triggered the imposition of automatic fines by the state, including but not limited to "a reinstatement fee of one hundred dollars per violation . . . if the vehicle was not covered by the required security for a period of one to thirty days, two hundred fifty dollars if the vehicle was not covered by required security for a period of thirty-one to ninety days, and five hundred dollars if the vehicle was not

covered by required security for a period in excess of ninety days," as well as an administrative fee of twenty-five dollars. La. R.S. 32:863(A)(3) and (D)(5). The exposure to and/or imposition of such fines were a direct and proximate result of the improper transmittal of notifications sent to the Louisiana State Office of Motor Vehicles by one or more of the defendants despite the fact that GoAuto never received a notice of cancellation as required by La. R.S. 9:3550(G)(4).

32.

The plaintiffs seek to represent a class of persons consisting of insured and third-party class members who are entitled to recover penalties as a result of GoAuto's bad faith conduct and/or misrepresentations regarding cancellation of its policies. The Class shall consist of two groups of persons who are currently citizens of the State of Louisiana, defined as follows:

(1)     Kimberly Williams seeks to represent the "insured class members," as defined in Paragraph 1(a), consisting of current and former GoAuto insureds who are Louisiana citizens and whose automobile insurance policies were "delivered or issued for delivery"  in Louisiana and whose insurance policies were purportedly cancelled by GoAuto within the 10 years prior to the filing of this petition under the circumstances alleged herein despite the fact that GoAuto had not properly complied with the mandatory Louisiana statutory provisions relating to cancellation of Louisiana automobile insurance policies; and

(2)     Nicholas Jenkins seeks to represent the "third-party class members," as defined in Paragraph 1(b), consisting of Louisiana citizens who within 10 years prior to the filing of this petition had a claim against a GoAuto insured arising out of the insured's operation of a motor vehicle and GoAuto took the position that the GoAuto insured's policy which was "delivered or issued for delivery" in Louisiana was purportedly cancelled, despite the fact that GoAuto had not

properly complied with the mandatory Louisiana statutory provisions relating to cancellation of Louisiana automobile insurance policies "delivered or issued for delivery" in Louisiana.

**FACTS RELATED TO THE PLAINTIFFS' CLAIMS AGAINST THE DEFENDANTS**

*GOAUTO INSURED AND PLAINTIFF, KIMBERLY WILLIAMS*

33.

Plaintiff Kimberly Williams was a GoAuto insured who was issued an automobile insurance policy from GoAuto bearing Policy No. 608479.

34.

On July 8, 2018, Ms. Williams was involved in a collision and submitted a claim to GoAuto as her automobile insurer, seeking coverage under her Policy No. 608479.

35.

In a letter dated July 24, 2018, GoAuto misrepresented to Ms. Williams that her Policy No. 608479 had purportedly been cancelled due to non-payment of a monthly installment, that APAC had requested cancellation of the policy, and that said cancellation had taken effect on April 23, 2018 at 12:01 am. Based on that misrepresentation of cancellation, GoAuto took the position that there was no coverage afforded to Ms. Williams for the collision under her GoAuto Policy No. 608479.

36.

As were the statements issued to other "insured class members," as defined in Paragraph 1(a), GoAuto's written statement to Ms. Williams on July 24, 2018, that her policy had been cancelled and its denial of coverage under her GoAuto Policy No. 608479 was a breach of the duty of good faith and fair dealing that it owed to her as its insured, and it was also a misrepresentation of material facts, because at all times from its inception in Louisiana in 2009

until the present, including in the ineffective cancellation of Ms. Williams' policy, GoAuto followed the same inadequate processes and procedures set forth above, and both GoAuto and APAC failed to comply with the strict requirements of Louisiana law that apply to cancellation of automobile insurance policies. Under those inadequate processes, GoAuto did not cancel Ms. Williams' GoAuto Policy No. 608479.

37.

Specifically, in failing to comply with Louisiana law, including La. R.S. 9:3550, and in misrepresenting to Ms. Williams that her GoAuto Policy No. 608479 had been cancelled, GoAuto and APAC did the following:

a)        As had been done on that and other days with other policies issued or delivered to "insured class members," as defined in Paragraph 1(a), APAC's computer system automatically input changes in GoAuto's computer system, which purported to cancel GoAuto Policy No. 608479 effective at 12:01 am on April 23, 2018, despite no documentation or other information having been provided by APAC to GoAuto requesting cancellation of that policy pursuant to the procedures set forth in La. R.S. 9:3550(G);

b)        As had been done on that and other days with other policies issued or delivered to "insured class members," as defined in Paragraph 1(a), later that morning of April 23, 2018, at approximately 2:30 am, after GoAuto Policy No. 608479 had already purportedly been cancelled within GoAuto's system, the APAC computer system automatically generated an electronic mail message with automatically generated attachments, including (1) an unsigned statement identifying all policies, including Policy No. 608479, which ANPAC would be requesting be cancelled by GoAuto later that day, and (2) the notices of cancellation for those policies, including Policy No. 608479. The electronic mail message and attachments were sent from the

account of James Holland, GMS chief information officer, to four separate electronic mail accounts maintained by Angela Pittman, GMS operations manager;

c)      As had been done on that and other days with other policies issued or delivered to "insured class members," as defined in Paragraph 1(a), later that day on April 23, 2018, during normal business hours—and after Policy No. 608479 had already purportedly been identified as cancelled by GoAuto's computer system that morning at 12:01 am without any involvement of a human being with the cognitive ability or power to evaluate or consider a request for cancellation of that policy—the documents attached to the automatically generated electronic mail message that was sent earlier that morning at approximately 2:30 am were printed out by a GMS employee to be signed by Angela Pittman. Despite the strict requirements of La. R.S. 9:3550(G)(3) that this certification had to be executed by APAC, delivered by APAC, and received by GoAuto **before** GoAuto could consider that cancellation of Policy No. 608479 had been requested by APAC, GoAuto had already purportedly cancelled the policy in violation of that statute through its automated computer systems earlier that morning;

d)      As had been done on that and other days with other policies issued or delivered to "insured class members," as defined in Paragraph 1(a), after Angela Pittman signed the certification to request the cancellation of Policy No. 608479 (which the computer system had already purportedly cancelled despite no request for cancellation having yet been made by APAC as required by the mandatory procedures set forth in La. R.S. 9:3550(G)), a GMS employee walked the certification and associated documents to a file room and placed those documents into a filing cabinet. Nobody working for GoAuto received those documents, accepted those documents, handled those documents, reviewed those documents, evaluated those

documents, or considered the request for cancellation of Policy No. 608479 set forth in those documents before they were placed into the filing cabinet;

e)     As had been done on that and other days with other policies issued or delivered to "insured class members," as defined in Paragraph 1(a), despite knowing that it had not complied with the mandatory requirements of La. R.S. 9:3550(G), GoAuto misrepresented to Ms. Williams that her GoAuto Policy No. 608479 had been cancelled, when it in fact had not been cancelled under the strict process for cancellation set forth under the law.

38.

As with other policies issued or delivered to "insured class members," as defined in Paragraph 1(a), in light of the above, GoAuto knew that it did not cancel Ms. Williams' GoAuto Policy No. 608479, as it had not complied with the strict, mandatory procedures of Louisiana law which it, a sophisticated insurer operating under the laws of that state, was required to comply with to cancel that automobile insurance policy.

39.

As with other "insured class members," as defined in Paragraph 1(a), as a result of GoAuto's misrepresentation to Ms. Williams regarding the purported cancellation of her GoAuto Policy No. 608479, GoAuto violated La. R.S. 22:1973 and is liable to Ms. Williams for penalties as provided under that statute.

40.

Additionally, as with other "insured class members," as defined in Paragraph 1(a), as a result of GoAuto's improper denial of coverage, GoAuto did not make any written offers to settle property damages arising from Ms. Williams' collision, which is a breach of GoAuto's statutory

duty under La. R.S. 22:1892(A)(4), for which GoAuto is liable for mandatory attorney fees and costs under La. R.S. 22:1892(B)(1).

41.

Ms. Williams does not seek to recover any damages resulting from GoAuto's breach of its duty of good faith and fair dealing and misrepresentations, but rather she seeks only a recovery of the mandatory reinstatement and administrative fees pursuant to La. R.S. 32:863(A)(3) and (D)(5), the penalties allowed by law under La. R.S. 22:1973(C) and the mandatory attorney fees and costs under La. R.S. 22:1892(B)(1).

### *THIRD PARTY CLAIMANT AND PLAINTIFF, NICHOLAS JENKINS*

42.

Plaintiff Nicholas Jenkins was a third party claimant who sought coverage under the policy of GoAuto's insured, Tuneshia Patterson, who was issued an automobile insurance policy by GoAuto bearing Policy No. 831635.

43.

On September 24, 2020, Mr. Jenkins was involved in a collision with a vehicle covered by a GoAuto automobile insurance policy and submitted a claim to GoAuto seeking coverage under the insured's Policy No. 831635.

44.

As had been done on that and other days with other insurance claims submitted by "third party class members," as defined in Paragraph 1(b), in a letter dated October 8, 2020, GoAuto misrepresented to Mr. Jenkins that its insured's Policy No. 831635 had purportedly been cancelled due to non-payment on September 10, 2020, at 12:10 am. Based on that

misrepresentation of cancellation, GoAuto took the position that there was no coverage afforded to Mr. Jenkins for the collision under GoAuto Policy No. 831635.

45.

As with other "third party class members," as defined in Paragraph 1(b), GoAuto's written statement to Mr. Jenkins on October 8, 2020, that its insured's policy had been cancelled and its denial of coverage under GoAuto Policy No. 831635 was not only a breach of the duty of good faith and fair dealing that it owed to its insured, but it was also a misrepresentation of material facts to Mr. Jenkins, because at all times from its inception in 2009 until the present, including in the ineffective cancellation of Policy No. 831635, GoAuto followed the same inadequate processes and procedures set forth above, and both GoAuto and APAC failed to comply with the strict requirements of Louisiana law that apply to cancellation of automobile insurance policies.

46.

Specifically, in failing to comply with Louisiana law, including La. R.S. 9:3550, and in misrepresenting to Mr. Jenkins that GoAuto Policy No. 831635 had been cancelled, GoAuto and APAC did the following:

a)    As had been done on that and other days with other policies issued or delivered to GoAuto insureds, including "insured class members," as defined in Paragraph 1(a), APAC's computer system automatically input changes in GoAuto's computer system, which purported to cancel GoAuto Policy No. 831635 effective at 12:01 am on September 10, 2020, despite no documentation or other information having been provided by APAC to GoAuto requesting cancellation of that policy pursuant to the procedures set forth in La. R.S. 9:3550(G);

b)      As had been done on that and other days with other policies issued or delivered to GoAuto insureds, including "insured class members," as defined in Paragraph 1(a), later that morning of September 10, 2020, at approximately 2:30 am, after GoAuto Policy No. 831635 had already purportedly been cancelled within GoAuto's system, the APAC computer system automatically generated an electronic mail message with automatically generated attachments, including (1) an unsigned statement identifying all policies, including Policy No. 831635, which ANPAC would be requesting be cancelled by GoAuto later that day, and (2) the notices of cancellation for those policies, including Policy No. 831635. The electronic mail message and attachments were sent from the account of James Holland, GMS chief information officer, to four separate electronic mail accounts maintained by Angela Pittman, GMS operations manager;

c)      As had been done on that and other days with other policies issued or delivered to GoAuto insureds, including "insured class members," as defined in Paragraph 1(a), later that day on September 10, 2020, during normal business hours—and after Policy No. 831635 had already purportedly been identified as cancelled by GoAuto's computer system that morning at 12:01 am without any involvement of a human being with the cognitive ability or power to evaluate or consider a request for cancellation of that policy—the documents attached to the automatically generated electronic mail message that was sent earlier that morning at approximately 2:30 am were printed out by a GMS employee to be signed by Angela Pittman. Despite the strict requirements of La. R.S. 9:3550(G)(3) that this certification had to be executed by APAC, delivered by APAC, and received by GoAuto **before** GoAuto could consider that cancellation of Policy No. 831635 had been requested by APAC, GoAuto had already purportedly cancelled the policy in violation of that statute through its automated computer systems earlier that morning;

d)      As had been done on that and other days with other policies issued or delivered to GoAuto insureds, including "insured class members," as defined in Paragraph 1(a), after Angela Pittman signed the certification to request the cancellation of Policy No. 831635 (which the computer system had already purportedly cancelled despite no request for cancellation having yet been made by APAC as required by the mandatory procedures set forth in La. R.S. 9:3550(G)), a GMS employee walked the certification and associated documents to a file room and placed those documents into a filing cabinet. Nobody working for GoAuto received those documents, accepted those documents, handled those documents, reviewed those documents, evaluated those documents, or considered the request for cancellation of Policy No. 831635 set forth in those documents before they were placed into the filing cabinet;

e)      As had been done on that and other days with insurance claims submitted by "third party class members," as defined in Paragraph 1(b), despite knowing that it had not complied with the mandatory requirements of La. R.S. 9:3550(G), GoAuto misrepresented to Mr. Jenkins that the GoAuto Policy No. 831635 had been cancelled, when in fact it had not been cancelled under the strict process for cancellation set forth under the law.

47.

As with other insurance claims submitted by "third party class members," as defined in Paragraph 1(b), in light of the above, GoAuto knew that it did not cancel GoAuto Policy No. 831635, as it had not complied with the strict, mandatory procedures of Louisiana law which it, a sophisticated insurer operating under the laws of that state, was required to comply with to cancel that automobile insurance policy.

48.

As with other "third party class members," as defined in Paragraph 1(b), as a result of GoAuto's misrepresentation to Mr. Jenkins regarding the purported cancellation of its insured's GoAuto Policy No. 831635, GoAuto violated La. R.S. 22:1973 and is liable to Mr. Jenkins for penalties as provided under that statute.

49.

Additionally, as with other "third party class members," as defined in Paragraph 1(b), as a result of GoAuto's improper denial of coverage, GoAuto did not make any written offers to settle property damages arising from Mr. Jenkins' collision, which is a breach of GoAuto's statutory duty under La. R.S. 22:1892(A)(4), for which GoAuto is liable for mandatory attorney fees and costs under La. R.S. 22:1892(B)(1).

50.

Mr. Jenkins does not seek to recover any damages resulting from GoAuto's breach of its duty of good faith and fair dealing and misrepresentations, but rather he seeks only a recovery of the penalties allowed by law under La. R.S. 22:1973(C) and the mandatory attorney fees and costs under La. R.S. 22:1892(B)(1).

**LEGAL BASIS FOR THE DEFENDANTS' LIABILITY**

51.

Under La. R.S. 22:1973(A), an insurer like GoAuto "owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." The duty of good faith and fair dealing owed by an insurer is contractual in nature, and any action brought under the statute for breach of that duty is a contract action. *Smith v. Citadel Ins. Co.*, 2019-00052 (La. 10/22/19), 285 So. 3d 1062.

52.

La. R.S. 22:1973(B) lists certain specific acts that constitute a breach of the insurer's duty of good faith and fair dealing. Specifically, an insurer will be found to have breached its duty to its insured and/or to a third-party claimant for "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue." La. R.S. 22:1973(B)(1).

53.

In addition to any damages caused by the insurer's breach of its duty of good faith and fair dealing, the insurer will also be liable to the plaintiffs/class representatives and the putative insured class members and third-party class members, all of whom would be entitled to an award of penalties in an amount not to exceed two times the damages, or $5,000, whichever is greater. La. R.S. 22:1973(C). A minimum award of penalties in the amount of $5,000 would be justified and reasonable under the circumstances as the plaintiffs/class representatives and members of the putative class all were directly harmed by the defendants' actions, including but not limited to having been exposed to personal liability and/or denied coverage for any claims that may have arisen from the operation of vehicles that should have been covered by a GoAuto insurance policy during the period of purported cancellation, as well as being subjected to the Louisiana "No Pay No Play" doctrine under La. R.S. 32:866 as a direct and proximate result of the improper cancellations and denials of coverage.

54.

The above-described deficient cancellation procedures by the defendants, and the defendants' subsequent reporting of the purported cancellation of their insured's policies to the insureds, the State of Louisiana, the Department of Public Safety, the Office of Motor Vehicles, and/or other governmental agencies, caused plaintiff Kimberly Williams and the insured class

members as defined in Paragraph 1(a) to be in violation of the provisions of Louisiana law, including but not limited to La. R.S. 32:861 *et seq.*, requiring motor vehicles registered in the state of Louisiana to be covered by an automobile liability policy.

55.

The defendants are liable to the plaintiffs and class members under Louisiana law, including breach of the contractual duty of good faith and fair dealing and violation of La. R.S. 22:1973(A) and (B)(1), for misrepresenting pertinent facts and/or provisions related to the plaintiffs' and insureds' insurance coverage, and specifically for misrepresenting to the plaintiffs, insured class members, third-party class members, the State of Louisiana, the Department of Public Safety, and/or other governmental agencies that the plaintiffs' and insureds' automobile insurance policies purchased from GoAuto had been cancelled.

56.

The reporting of the cancellation of coverage by the defendants when the policy was not properly canceled subjects plaintiff Kimberly Williams and the members of the insured class as defined in Paragraph 1(a) to penalties from the State of Louisiana. For example, in 2015 the State of Louisiana Office of Motor Vehicles sent 1.2 million letters seeking $444 million in fines on lapsed auto insurance from Louisiana drivers pursuant to La. R.S. 37:863 following receipt of notification from their insurers that their policies had lapsed, some of which had occurred many years in the past: [1]

---

[1] *See* Maya Lau, The Advocate, "Louisiana drivers struggle to clear auto-insurance penalties with OMV; check your status here" (Oct. 23, 2015), available at https://www.theadvocate.com/baton_rouge/news/crime_police/article_3d7f6268-850f-54c2-b4b6-0848c26a4b30.html.

## Louisiana drivers struggle to clear auto-insurance penalties with OMV; check your status here

by maya lau mlau@theadvocate.com   OCT 23, 2015 - 8:42 AM   💬 📄 2 min to read

\*        \*        \*

OMV's missives are an effort to recoup an estimated $444 million in outstanding debts following passage of a law this year that allows the agency to utilize the state's in-house collection agency known as the Office of Debt Recovery. But it has prompted an outcry from drivers across the country who say they're being extorted even after providing proof they weren't driving without insurance.

Edmonson says the department will cancel fines for people who show evidence they shouldn't be charged — for example, proof of insurance for the time period in question or documents showing the return of a license plate after moving out of Louisiana. But even logging a complaint is proving difficult for many drivers, especially those whose apparent insurance lapses derive from their out-of-state moves.

57.

Through the defendants' deficient attempts to cancel the automobile liability policies of GoAuto's insureds and their improper reporting of those cancellations to the Office of Motor Vehicles, the defendants exposed plaintiff Kimberly Williams and the insured class members as defined in Paragraph 1(a) to the assessment of fines from the Office of Motor Vehicles, including fines that have already been assessed and collected in the past or which may continue to be assessed and collected into the future because of the defendants' misrepresentations to the state regarding the purported cancellations of the insured class members' automobile insurance policies during the past 10 years.

58.

La. R.S. 22:1892(A)(4) further provides that "[a]ll insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim." The failure to make such offer shall subject the insurer to liability for penalties of 50% of the amount that was due or one thousand dollars, whichever is greater, "as well as reasonable attorney fees and costs." La. R.S. 22:1892(B)(1). An award of attorney fees and costs is mandatory when there is a statutory violation. *Calogero v. Safeway Ins. Co.*, 99-1625, p. 7 (La. 01/19/00), 753 So. 2d 170, 174. When an act constitutes a violation of both La. R.S. 22:1973 and 22:1892, the insurer will be liable for attorney fees in addition to the higher of the two statutory penalties. *Id.*

59.

In addition to damages and/or penalties that are owed for breach of its duties under La. R.S. 22:1973(A) and (B)(1), the defendants are also liable to the plaintiffs and the class members for mandatory attorney fees and costs under La. R.S. 22:1892(B)(1) for the breach of the statutory duties under La. R.S. 22:1892(A)(4).

### DEFENDANTS' LIABILITY UNDER SINGLE BUSINESS ENTERPRISE THEORY OF LIABILITY

60.

Louisiana courts recognize that "[w]hen corporations represent precisely the same single interest, the court is free to disregard their separate corporate identity." *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257 (La. App. 1 Cir. 1991), *writ denied*, 580 So. 2d 668 (La. 1991). The defendants GoAuto, GMS, GoAuto, LLC, APAC, Go Card, LLC, and Health Reform Insurance, LLC all represent the same single interest, and the Court should therefore disregard their separate corporate identities.

61.

The defendants GoAuto, GMS, GoAuto, LLC, APAC, Go Card, LLC, and Heath Reform Insurance, LLC, operate as a single business enterprise based on the relevant factors recognized by Louisiana courts. Specifically, the defendants:

a) Have substantially identical ownership and control, including through Greg Tramontin, who at all times pertinent to the allegations of this Complaint was CEO, president, shareholder, manager, agent, and spokesperson for all six companies;

b) Share common officers, members, managers, and agents;

c) Share unified administrative control and have supplementary business functions. In fact, the defendants exist solely to serve one another. For example, APAC finances policies only for GoAuto, but not for any other insurance companies;

d) Share employees. GMS is the only defendant that has any employees, and those employees who receive salaries and benefits from GMS perform work for APAC and GoAuto, which have no employees of their own, and for the other defendants; and

e) Share physical office space, computer servers, and other supplies and equipment.

62.

Because of the above-described relationship among defendants GoAuto, GMS, GoAuto, LLC, APAC, Go Card, LLC, and Health Reform Insurance, LLC, those companies operate as a single business enterprise, such that the assets of each such defendant shall be made available to satisfy any judgment entered in this suit.

## REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF

63.

The plaintiffs are entitled to declaratory and injunctive relief against the defendants pursuant to Louisiana Code of Civil Procedure articles 1871 *et seq.* and 3601 *et seq.*, , based on the defendants' violations of the law as alleged herein.

64.

The plaintiffs seek declaratory relief finding that the cancellation procedures which are used by the defendants as set forth herein are in violation of the law, including La. R.S. 9:3550, and further that any and all insurance policies of the insured class members which the defendants purportedly attempted to cancel using those unlawful procedures were not cancelled and instead remained in effect.

65.

Under Article 3601, an injunction shall issue in cases where irreparable injury, loss or damage may result to the applicant. However, an applicant is entitled to an injunction without the necessity of showing irreparable harm where the conduct sought to be restrained is unconstitutional or unlawful. *Jurisich v. Jenkins*, 99-0076, p. 4 (La. 10/19/99), 749 So. 2d 597, 599.

66.

The plaintiffs are entitled to an injunction in this case against the defendants because the unlawful conduct which the plaintiffs seek to restrain constitutes violations of the law under La. R.S. 9:3550, 22:1892, and 22:1973.

67.

For these reasons, the plaintiffs seek the issuance of an injunction prohibiting the defendants from (1) maintaining the position that any of the insurance policies issued to the insured class members were properly cancelled; (2) taking the position that the Louisiana State Office of Motor Vehicles was properly notified of any cancellations of insurance policies issued to the insured class members; and (3) notifying the Office of Motor Vehicles of the purported cancellation of any GoAuto policies after the date this suit is filed until a final judgment has been rendered in this case.

68.

The plaintiffs further seek a mandatory injunction requiring the defendants to pay any and all fines and/or penalties previously imposed or to be imposed in the future by the State of Louisiana as a result of each and every purported cancellation of policies that were improperly and ineffectively canceled.

**DAMAGES**

69.

The plaintiffs do not seek to recover any individualized assessment of damages that might have been sustained as a result of the defendants' legally deficient cancellation scheme and bad faith actions in misrepresenting pertinent facts and/or provisions relating to the plaintiff's insurance coverage offered by GoAuto. Instead, the plaintiffs seek an assessment and recovery of the maximum penalties allowed under the law, $5,000.00 for each and every violation, as provided under La. R.S. 22:1973(C), as well as mandatory attorney fees pursuant to La. R.S. 22:1892(B)(1).

70.

The determination of the insured and third-party class members' penalty claims does not require any individual determination or assessment of the fault or damages against any of Go-Auto's insureds, as penalties for breach of the duties set forth in La. R.S. 22:1973 are available even without proof of actual damages. *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 2003-0360 (La. 12/3/03), 860 So. 2d 1112. Thus, statutory class-wide penalties are due to the class members even in the absence of any individual proof of entitlement to damages, as those penalty claims are based upon the statutory penalties due from the defendants for their bad faith conduct and misrepresentations concerning the lack of available insurance coverage in violation of law, which are directly attributable to the acts of the named defendants.

## CLASS CERTIFICATION

71.

This action is appropriate for determination through the Louisiana class action procedure, La. Code Civ. Proc. art. 591 *et seq*., for the following nonexclusive reasons:

A.  Because thousands of GoAuto policies are purportedly cancelled every day through the improper and legally deficient scheme described in this petition, the significant number of class members in both the group of the insured class members and the group of the third-party class members presents a level of numerosity better handled through the class action procedure as opposed to mass joinder of individual claims.

B.  Common issues of law and fact pertaining to the determination of the fault and liability of the defendants predominate over the individual issues or quantum.

C. The determination of fault and the basis for assessment of damages may be made in a class action.

D. The named plaintiffs have sustained damages of the nature described herein and are suitable representatives for the class.

E. The class may be defined objectively in terms of ascertainable criteria, such that the Court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in these proceedings.

F. Plaintiffs are represented by skilled attorneys who are experienced in the handling of insurance bad faith, mass tort, and class action litigation, and who may be expected to handle this action in an expeditious and economical manner to the best interests of all the class members.

G. The class action procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented.

72.

The defendants, GOAUTO INSURANCE COMPANY, GOAUTO MANAGEMENT SERVICES, LLC, GOAUTO, LLC, AUTO PREMIUM ASSISTANCE COMPANY, LLC, GO CARD, LLC, and HEALTH REFORM INSURANCE, LLC are liable unto plaintiffs and the putative class members for all damages as are reasonable in the premises, statutory penalties, legal interest from the date of judicial demand until paid, and all costs of this suit.

**WHEREFORE**, Plaintiffs pray that after due proceedings are had:

1. This action be certified as a class action pursuant to the provisions of La. Code Civ. Proc. art. 591 *et seq.*, in the respects alleged herein, for the purposes of determining issues common to the class, including liability for damages;

2.      That upon certification of the class, the Court order the formulation of a suitable management plan pursuant to La. Code Civ. Proc. art. 592(E);

3.      That the Court find that the defendants constitute a single business enterprise;

4.      That there be the issuance of class-wide declaratory and injunctive relief finding that the cancellation procedures used by the Defendants were unlawful; prohibiting GOAUTO INSURANCE COMPANY, GOAUTO MANAGEMENT SERVICES, LLC, GOAUTO, LLC, AUTO PREMIUM ASSISTANCE COMPANY, LLC, GO CARD, LLC, and HEALTH REFORM INSURANCE, LLC, from (1) maintaining the position that any of the insurance policies issued to the insured class members were properly cancelled; (2) taking the position that the Louisiana State Office of Motor Vehicles was properly notified of any cancellations of insurance policies issued to the insured class members; and (3) notifying the Office of Motor Vehicles of the purported cancellation of any GoAuto policies after the date this suit is filed until a final judgment has been rendered in this case; and further that a mandatory injunction issue requiring the defendants to pay any and all fines and/or penalties previously imposed or to be imposed in the future by the State of Louisiana as a result of each and every purported cancellation of policies that were improperly and ineffectively canceled through the procedures set forth in this Complaint.

5.      That after due proceedings are had, there be judgment herein in favor of the plaintiffs and against the defendants, GOAUTO INSURANCE COMPANY, GOAUTO MANAGEMENT SERVICES, LLC, GOAUTO, LLC, AUTO PREMIUM ASSISTANCE COMPANY, LLC, CO CARD, LLC, and HEALTH REFORM INSURANCE, LLC, for all damages as are reasonable in the premises, statutory penalties, legal interest from the date of

judicial demand until paid, attorney fees, all costs of this suit, and for all other just and equitable relief permitted by law.

Respectfully submitted:

Simien & Simien, L.L.C.
Attorneys and Counselors At Law
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809
(225) 932-9221; (225) 932-9286 (fax)

_____*s/Roy Bergeron, Jr.*_____
By:    Eulis Simien, Jr., Bar # 12077
       eulissimien@simien.com
       Jimmy Simien, Bar # 1598
       jimmysimien@simien.com
       Roy Bergeron, Jr., Bar # 33726
       roybergeron@simien.com