UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KIMBERLY WILLIAMS, ET AL.                              CIVIL ACTION

VERSUS

GOAUTO INSURANCE COMPANY,
ET AL.                                                 NO. 21-00092-BAJ-SDJ

RULING AND ORDER

This is a potential class action lawsuit. Named Plaintiffs Kimberly Williams, Nicholas Jenkins, and Felita Wright challenge whether Defendant GoAuto Insurance Company's procedure for cancelling policies complies with Louisiana Revised Statute § 9:3550, which governs the cancellation due to non-payment of financed automobile insurance policies. Now before the Court are Defendants GoAuto Insurance Company (GoAuto), GoAuto Management Services, LLC, Auto Premium Assistance Company, LLC (APAC), GoAuto, LLC, Go Card, LLC and Health Reform Insurance, LLC's **Motion for Summary Judgment (Doc. 109)** and Plaintiffs' **Motion for Partial Summary Judgment on the Deficiencies in GoAuto's Cancellation Procedures (Doc. 110)** (*hereinafter* **"the Motions")**. Both Motions are opposed. (Docs. 111, 112). The parties have not litigated class certification. Instead, the dueling summary judgment motions before the Court were filed pursuant to a limited scheduling order intended to resolve the major legal issues prior to possible class certification. (Doc. 88). For the reasons that follow, Defendants' Motion will be granted and this case will be dismissed with prejudice.

I.  BACKGROUND

   a. **Summary Judgment Evidence**

The following facts are drawn from Defendants' Statement of Material Facts Supporting Summary Judgment (Doc. 109-32, *hereinafter* "GoAuto SOF"), Plaintiffs' Response to Defendants' Statement of Material Facts (Doc. 112-1, *hereinafter* "Plaintiffs' Response SOF"), Plaintiffs' Statement of Undisputed Material Facts In Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 110-2, *hereinafter* "Plaintiffs SOF"), GoAuto's Response to Statement of Undisputed Material Facts Filed in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 113, *hereinafter* GoAuto Response), the memoranda supporting and opposing the Motions, and the record evidence submitted in support of these pleadings.

Plaintiffs Williams and Wright are former GoAuto insureds whose policies were cancelled for non-payment. (Doc. 109-1 at 3). Williams obtained a six-month automobile insurance policy from GoAuto in March 2018. (GoAuto SOF ¶ 1). Wright obtained multiple GoAuto policies between 2011 and 2016. (*Id.* ¶ 23). Plaintiff Jenkins is a third-party claimant who was involved in a collision with a GoAuto insured driver in September 2020. (*Id.* ¶¶ 33, 37).

Each policy in question, including Williams', Wright's, and that of the driver involved in the accident with Jenkins, was financed through an agreement between the policyholder and APAC, an insurance premium finance company, which operates as a separate entity from GoAuto, but which maintains its principal office at an

2

address in Baton Rouge, Louisiana, at an office shared with GoAuto. (Doc. 109-1 at 3). Under the agreements, APAC immediately paid GoAuto in full for the cost of the policy, and the insured agreed to make monthly payments to APAC. (GoAuto SOF ¶ 3). The agreements also authorized APAC to cancel the policy if any payments were unpaid. (*Id.* ¶ 5).

Each insured in question failed to timely pay a monthly payment on one or more policies. (*Id.* ¶¶ 6, 23, 35). After failing to pay, the insureds received notice that if no payment was received, their policies would be canceled at 12:01 a.m. on the tenth business day after the monthly installment due date. (*See id.* ¶¶ 7, 26, 35). Because the required payment was not made on any of the policies here, APAC requested cancellation. (*Id.* ¶ 8).

The parties generally do not dispute the procedure followed by APAC and GoAuto to cancel the policies in question. Instead, the question asked by the parties' Motions is whether the undisputed procedure violates Louisiana law. But for a slight modification made around 2016 or 2017, the cancellation procedure for non-payment is as follows:

When no payment on the policy is received within ten days of the due date, APAC communicates an electronic request to GoAuto to cancel policies for nonpayment. (*Id.* ¶ 9). APAC also sends an email to GoAuto with a Request for Cancellation. (*Id.* ¶ 10). As an example, the email sent on March 23, 2018, requesting cancellation of Williams' policy read:

3

> Please cancel the policies for the policy holders listed in the attached letters, which consists of 54 pages, due to non-payment of the monthly installment due under their Premium Finance agreement.
>
> APAC certifies that:
>
> (1) The Premium Finance Agreement contains a valid power of attorney.
> (2) The Premium Finance Agreement is in default and the default has not been timely cured.
> (3) Upon default, a Ten Day Notice of Cancellation was sent to the insured. Copies of the notices are enclosed and the affidavit proof of mailing is available upon request.
> (4) Copies of the Ten Day Notice of Cancellation were sent to all persons shown by the Premium Finance Agreement to have an interest in any loss which may occur there under.
>
> Sincerely,
> Auto Premium Assistance Company, LLC

(*Id.*).

Later the next morning, a paper copy of the email is printed out and signed by Angela Pittman, APAC's operations director. (*Id.* ¶ 11). That request is then delivered to Michelle Wells, a GMS employee assigned to GoAuto, who stamps the paper copy "Received" and stores it in a filing cabinet in a room accessible to both GoAuto and APAC (*Id.* ¶ 12). Recall that the two companies occupy the same building. (Doc. 109-1 at 3).

Before 2016, the procedure differed only in that the paper copy signed by Pittman was delivered to GoAuto by placing it in APAC and GoAuto's shared filing cabinet directly. (*Id.* ¶ 28).

4

### b. Procedural History

Williams and Jenkins filed a class action lawsuit against GoAuto and the other Defendants in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana, on January 5, 2021. (Doc. 1-2). GoAuto, LLC removed the action to this Court asserting federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), alleging that there was minimal diversity between the parties and the amount in controversy exceeded $5 million. (Doc. 1 at 4). Williams and Jenkins initially sought to remand the case but moved to withdraw their Motion to Remand after a period of jurisdictional discovery. (Doc. 79). Soon after, the Court ordered limited discovery and set deadlines for the filing of dispositive motions on the central legal issue—whether the cancellation procedure is legal. (Doc. 88). Wright was added as a Plaintiff in a Second Superseding and Amending Complaint on November 16, 2023. The Motions for summary judgment and partial summary judgment followed. A hearing on the Motions was held on April 1, 2024. (Doc. 122).

Plaintiffs seek no recovery of damages for GoAuto's alleged violation of the state law regulating the cancellation procedure. (*See* Plaintiffs' Response SOF ¶ 22). Instead, they seek "recovery of any mandatory reinstatement and administrative fees pursuant to La. R.S. 32:863(A)(3) and (D)(5)," (*id.*), and bad faith penalties for alleged violations of La. R.S. 22:1973, which imposes penalties for misrepresentations by insurers, and La. R.S. 22:1892, which requires insurers to make a written offer to settle a claim within a certain amount of time. (Doc. 112 at 17). The theory goes that

5

because GoAuto's cancellation procedure was ineffective, no policy was ever actually canceled. Any subsequent communication to an insured from GoAuto regarding a cancelation was therefore a misrepresentation because the policy was not canceled. Any failure by GoAuto to make a written offer of settlement on a claim made under an ineffectually canceled policy was a further violation. (*Id.*).

## II. LAW AND ANALYSIS

### a. Standard

Federal Rule of Civil Procedure 56(a) provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant bears its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. Stated differently, "[i]f the party with the burden of proof cannot produce any summary judgment evidence on an essential element of [their] claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

6

### b. Discussion

The parties' dispute centers on the construction of a single section of the Louisiana statute that governs the cancelation procedure for financed auto insurance policies. In relevant part, the section provides as follows:

> G. Insurance contracts may be canceled upon default as follows:
>
> (1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract, or contracts, or endorsements listed in the agreement, the insurance contract, or contracts, or endorsements shall not be canceled by the insurance premium finance company unless such cancellation is effectuated in accordance with this Subsection.
>
> (2) Upon default of the insurance premium finance agreement by the debtor, the premium finance company shall mail or send an electronic notice of cancellation to the insured, at his last known mailing or electronic address as shown on the records of the insurance premium finance company . . . .
>
> (3)(a) Ten days after notice of cancellation has been mailed to the insured, if the default has not been cured, **the insurance premium finance company may thereafter effect cancellation** of such insurance contract, or contracts, or endorsements **by sending to the insurer, by depositing in the mail or with a private carrier, or via electronic mail, within five business days after the date of cancellation . . . a copy of the notice of cancellation** together with a statement certifying that:
>
> (i) The premium finance agreement contains a valid power of attorney as provided in Paragraph (1) of this Subsection.
>
> (ii) The premium finance agreement is in default and the default has not been timely cured.
>
> (iii) Upon default, a notice of cancellation was sent to the insured as provided in Paragraph (2) of this Subsection, specifying the date of sending by the premium finance company to the insured.

7

>    (iv) Copies of the notice of cancellation were sent to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, holders of a security interest in the insured property, or third parties to whom the insurance premium finance company has sent notice of cancellation.
>
>    (b)(i) **Upon receipt** of such notice of cancellation and statement from the premium finance company, the insurer shall consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:885. **The effective date of cancellation shall be as of 12:01 a.m. on the tenth day after the date of sending of the notice of cancellation** as shown in said statement furnished to the insurer by the premium finance company.

La. R.S. § 9:3550(G) (emphasis added to highlight the language of the statute at issue here).

Plaintiffs argue that GoAuto's procedure is deficient because: (1) GoAuto never "receives" a cancellation request from APAC; (2) GoAuto never receives a cancellation request by mail, private carrier, or electronic mail; and (3) GoAuto cancels the policies automatically before APAC makes a request for cancellation. (*See* Doc. 112 at 6). The Court will address each argument in turn.

First, Plaintiffs argue that because GoAuto never "review[s]" or takes "any affirmative action" on the cancellation requests, it cannot be considered to have "received" the requests at all. (Doc. 112). This argument is dead in the water.

The statute states merely that GoAuto, "[u]pon *receipt* of such notice of cancellation," "may proceed to cancel such contract or contracts." La. R.S. §

8

9:3550(G)(3)(b)(i) (emphasis added). "When the plain language of a statute is unambiguous and does not lead to an absurd result, [the Court's] inquiry begins and ends with the plain meaning of that language." *Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020) (quotations omitted). Black's Law Dictionary defines receive as "to come into possession of or get from some outside source." (12th ed. 2024). Under the plain language of the statute and considering either the pre-2016 or post-2016 process, GoAuto "receives" the cancellation requests because it "come[s] into possession" of them from the APAC employee, who either delivers the requests personally to a GoAuto employee or leaves the requests in a file cabinet belonging to GoAuto. Plaintiffs provides no authority for the proposition that the Court should read into the statute additional requirements that GoAuto must also "[see], touch[], review[], or consider[]" the notices. (Doc. 112 at 7). Under the ordinary meaning of "receive," GoAuto's procedure satisfies the statute.

Second, Plaintiffs argue that APAC's method of hand delivering the notices of cancellation does not comply with the statute because hand delivery by an employee does not count as delivery by "mail, private carrier, or electronic mail"—the only methods allowed by the statute. (Doc. 112 at 10). The Court disagrees.

The statute provides that GoAuto may "effect cancellation of such insurance contract, or contracts, or endorsements by sending [the notices of cancellation] to the insurer, by depositing in the mail or with a private carrier, or via electronic mail." La.

9

R.S. § 9:3550(G)(3)(a).[1] Plaintiffs argue that when a GMS employee walks the documents over to GoAuto, the statute is not satisfied. (*See* Doc. 112 at 10). Although the Court agrees that this method of sending does not constitute sending by mail or electronic mail, the Court finds that this method of sending is encompassed by the phrase "private carrier."

Although the Louisiana Supreme Court has yet to weigh in on the issue, the U.S. Court of Appeals for the Fifth Circuit[2] has defined a private carrier as "one who, without making it a vocation, or holding himself out to the public as ready to act for all who desire his services, undertakes, by special agreement in a particular instance only, to transport property from one place to another either gratuitously or for hire." *Huntley v. Bayer MaterialScience, L.L.C.*, 452 F. App'x 453, 457 (5th Cir. 2011) (quoting *Lone Star Steel Co. v. McGee*, 380 F.2d 640, 645 (5th Cir. 1967)); *see also*

---

[1] GoAuto argues that this language allows for four methods of delivery: sending, sending by mail, sending by private carrier, and sending by electronic mail. (Doc. 111 at 8). The Court finds that the latter three listed methods of sending modify and restrict the ways that GoAuto can send the notices. If the legislature intended for delivery to be completed by mere "sending" to the insurer, it would not have included the superfluous additional language describing methods of sending. *See Colvin v. Louisiana Patient's Comp. Fund Oversight Bd.*, 2006-1104, p. 6 (La. 1/17/07), 947 So. 2d 15, 19–20 ("[C]ourts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found."). In other words, under the Court's reading of the statute, GoAuto's options for sending are limited to mail, private carrier, or electronic mail.

[2] Louisiana courts consistently turn to federal precedent absent guidance from the state's higher courts. *See London v. Associated Pipe Line Contractors*, No. 3:14-CV-471, 2015 WL 545978, at *6 (W.D. La. Feb. 10, 2015) (citing examples); *Williams v. Conoco, Inc.*, 860 F.2d 1306, 1307 (5th Cir. 1988) ("Louisiana courts, however, will look to the interpretation of similar federal statutes . . . as authority in interpreting Louisiana statutes.") (citing additional examples).

*Portier v. Thrifty Way Pharmacy*, 476 So. 2d 1132, 1139–40 (La. Ct. App.), *rev'd in part*, 479 So. 2d 916 (La. 1985), *and writ denied*, 479 So. 2d 924 (La. 1985) (citing identical definition). In other words, a private carrier can be *anyone* who agrees to transport property from one place to another so long as they do not hold themselves out as providing the delivery services for the public. Numerous courts around the country have defined the term in similarly broad strokes. *Thompson v. Heineman*, 289 Neb. 798, 834 (2015) (defining private carrier as "one that, without being in the business of transporting for others or holding itself out to the public as willing to do so, undertakes only by special agreement to transport property, either gratuitously or for a consideration"); *Com. Ins. Co. v. Ultimate Livery Serv., Inc.*, 452 Mass. 639, 641 (2008) ("A 'private carrier is one who holds himself out as ready to furnish transportation for hire only to those with whom he chooses to deal in accordance with such contracts as he makes with them."); *McIntyre v. Harrison*, 157 S.E. 499, 508 (Ga. 1931) ("A 'private carrier' is one who, without being engaged in the business of carrying as a public employment, undertakes to deliver goods in a particular case for hire or reward.").

Here, the APAC employee who delivers the notices of cancellation neatly fits the definition of private carrier. She is not in the "vocation" of delivering goods nor does she "hold [her]self out to the public as ready" to deliver goods for anyone. *See Huntley*, 452 F. App'x at 457. Instead, she "undertakes" for her employer to "transport property," in this case the notices of cancellation, "from one place to another." *Id.* For

11

this reason, the Court finds that the delivery of the notices of cancellation is done by "private carrier," as required by § 9:3550(G)(3)(a).

Third and finally, Plaintiff argues that the cancellations are ineffective because the cancellations "are set to take place automatically within [GoAuto's] system at 12:01 am on the morning of cancellation." (Doc. 112 at 14). The Court disagrees.

Recall that upon failure to pay a monthly premium, the insured is sent a notice that he or she has nine days to make payment. Under the statute, so long as a valid request for cancellation is sent to the insurer within five days after that grace period has expired, "[t]he effective date of cancellation shall be as of 12:01 a.m. on the tenth day after the date of sending of the notice of cancellation." La. R.S. § 9:3550(G)(3)(b)(i). As Defendants convincingly argue, there is "nothing in § 9:3550 that dictates how an insurer must document in its own records that it has cancelled a policy." (Doc. 115 at 4). Plaintiffs protest that they take issue with the timing of the cancellation because GoAuto "proceed[s] to cancel a policy without receiving a request to do so." (Doc. 112 at 15). But as Defendants point out, "while Plaintiffs might well be correct that anything GoAuto did to mark the policies as cancelled in its own computer system was legally ineffective until GoAuto received the email and/or the hand delivery, GoAuto was plainly entitled to treat the policies as canceled upon receipt of the required documents." (Doc. 115 at 4). Sure enough, there is nothing in the statute about how GoAuto chooses to record the policies as cancelled, and as

12

mentioned, the statute itself requires that the effective date of cancellation be 12:01 a.m. on the day after the grace period ends.

More importantly, perhaps, Plaintiffs' argument on this point lacks any principle. Nothing would change from the insured's perspective if GoAuto's computer marked the policies as cancelled immediately after the grace period or after receiving the requests for cancellation via hand delivery. So long as GoAuto followed the proper procedure, the policy would be cancelled effective "12:01 a.m. on the tenth day after the date of sending of the notice of cancellation." La. R.S. § 9:3550(G)(3)(b)(i). To illustrate, if an insured got into an accident after the grace period expired but before the requests for cancellation were delivered to GoAuto, as long as GoAuto followed the proper cancellation procedure, which the Court here finds that it does, the effective time of cancellation is immediately following the grace period. In other words, the insured's post-grace-period accident would not be covered regardless of whether the accident occurred before the notices of cancellation were delivered or not.

For these reasons, the Court finds that GoAuto complies with the statute when its system marks the policies as cancelled at 12:01 a.m. on the day after the grace period ends.

In sum, the Court finds that GoAuto's cancellation procedure complies with the statute because the request for cancellation is delivered to GoAuto by a "private carrier," and the request is "received" by GoAuto. Additionally, because under the statute the cancellation will be effective at 12:01 a.m. on the day after the grace period

ends, it is irrelevant that GoAuto's system marks the policies as cancelled before the notices of cancellation are received.³

### III. CONCLUSION

**IT IS ORDERED** that the Defendants' **Motion for Summary Judgment (Doc. 109)** be and is hereby **GRANTED**, and Plaintiffs' **Motion for Partial Summary Judgment on the Deficiencies in GoAuto's Cancellation Procedures (Doc. 110)** be and is hereby **DENIED**. Plaintiffs' claims against Defendants will be dismissed with prejudice.

Judgment shall issue separately.

Baton Rouge, Louisiana, this 25th day of September, 2024

**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

³ Because the Court finds that GoAuto's cancellation procedure complies with the statute for the above-stated reasons, and therefore summary judgment is appropriate, the Court does not reach GoAuto's argument that Plaintiffs are not entitled to bad faith penalties under La. R.S. § 22:1973 and § 22:1892, (see Doc. 109-1 at 19), or that GoAuto is entitled to immunity under La. R.S. § 9:3550(G)(3)(c), (see id. at 25). Nor does the Court reach Plaintiffs' argument that GoAuto's cancellation procedure is ineffective because the automatically generated email sent from APAC to GoAuto with the requests for cancellation is not "certified" under the statute. (See Doc. 112 at 8).